IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

STERICYCLE OF PUERTO RICO, INC.,

    **Petitioner**,

        v.

CENTRAL GENERAL DE TRABAJADORES,

    **Respondent**.

**CIVIL NO**: 19-1368 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge:

Pending before the Court is Petitioner Stericycle of Puerto Rico, Inc.'s ("Petitioner" or "Stericycle") *Motion for Summary Judgment* which requests that the Court vacate an arbitration award issued by the Bureau of Mediation and Arbitration of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico ("the Bureau"). (Docket No. 5). Alongside said *Motion*, Petitioner also filed a *Brief in Support of Motion for Summary Judgment* ("Brief"). (Docket No. 6). Having considered Petitioner's **unopposed** *Motion for Summary Judgment* and the *Brief* in support of the same, the *Motion for Summary Judgment* is **GRANTED** for the reasons set out below. Accordingly, the Arbitration Award issued by the Bureau in the case captioned <u>Central General de Trabajadores v. Stericycle, Inc.</u>, Case A-19-880, is hereby **VACATED**.[1]

---

[1] The Court notes that the legal issues raised in this case are practically the same as those raised by Stericycle of Puerto Rico, Inc. in Case No. 19-1175. In

## I. BACKGROUND

This case arises from Stericycle's April 17, 2019, petition to vacate a December 3, 2018 award issued by the Bureau in the case captioned <u>Central General de Trabajadores v. Stericycle, Inc.</u>, Case A-19-880, which decreed that Stericycle must arbitrate the pending controversy with Central General de Trabajadores ("Respondent" or "CGT"). The case was transferred to the undersigned on August 7, 2019. (Docket No. 10). Stericycle had moved for summary judgment on June 27, 2019. (Docket Nos. 5 and 6). On July 27, 2019, Petitioner requested that the Court deem the pending *Motion for Summary Judgment* as unopposed and the *Statement of Uncontested Facts* ("SMUF") as admitted. (Docket No. 9). Before the Court could grant said request however, it required that Petitioner accredit that CGT was properly served. (Docket Nos. 12 and 16). Petitioner complied with the Court's request at Docket No. 15 and the Court subsequently deemed the SMUF as admitted and the *Motion for Summary Judgment* as unopposed. (Docket No. 17).

In a nutshell, the Petition avers that between May 1, 2010 and April 30, 2013, the Teamsters Union of Puerto Rico, Local 901 ("Teamsters") was the exclusive representative of Stericycle employees. (Docket No. 5-1 at 1 ¶1). On May 7, 2012, the Teamsters filed a Complaint in the Bureau ("the Grievance"). <u>Id.</u> at 2 ¶3.

---

that case, the Court also granted summary judgment and vacated the arbitral award. *See* Case No. 19-1175, Docket No. 29.

Following an election on March 9, 2016, respondent CGT became Stericycle employees' exclusive representative and on November 1, 2016 Stericycle and CGT signed a Collective Bargaining Agreement with a retroactive effective date of May 1, 2016 and expiring on April 30, 2019 ("the Stericycle/CGT CBA"). Id. at 2 ¶¶ 7-8. The Bureau then held a hearing wherein Stericycle argued that it has no obligation under the Stericycle/CGT CBA to arbitrate Teamsters' grievance with GGT as Teamsters' grievance arose out of the Stericycle/Teamsters' CBA and **not** the Stericycle/CGT one. Id. at 3 ¶¶9-10). On February 22, 2018, the Arbitrator issued the award holding that Stericycle had to arbitrate the Grievance with CGT. Id. at 3 ¶13.

While judicial review of arbitral awards is narrow, in this case the arbitral award must give way. Simply put, arbitration is matter of contract and the uncontroverted material facts of the case and the record on summary judgment reveal that there is no provision in the four corners of the Stericycle/Teamsters CBA that requires Petitioner to arbitrate the May 7, 2012 Grievance with CGT instead of the Teamsters. Likewise, there is no provision within the four corners of the Stericycle/CGT CBA that requires Petitioner to arbitrate grievances that arose prior to this latter CBA's effective date of March 9, 2016.

## II. APPLICABLE LAW

A. **Summary Judgment Standard**

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). This rule entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). On the other hand, a fact is considered material "if it has the potential of determining the outcome of the litigation." Id.

The moving party has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once this occurs, the burden shifts to the nonmovant. The United States Court of Appeals for the First Circuit ("First Circuit") has stated that a non-moving party must "with respect to each issue on which he has the burden of proof, […] demonstrate that a trier of fact reasonably could find in his favor." Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (quotation omitted). This means that "[a] plaintiff opposing summary judgment bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'"

Suzuki v. Abiomed, Inc., 2019 WL 6337297, at *5 (1st Cir. 2019) (quoting Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011)).

While a Court will draw all reasonable inferences in favor of the non-movant, it will disregard unsupported or conclusory allegations. *See* Johnson v. Duxbury, Massachusetts, 2019 WL 3406537, at *2 (1st Cir. 2019). Moreover, the United States Supreme Court has stated that the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). Thus, a court should review the record "as a whole," and "not make credibility determinations or weigh the evidence" as that is a job for the jury. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

Finally, Local Rule 56 also governs summary judgment. *See* D.P.R. Civ. R. 56. Per the Rule, a motion for summary judgment must include "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which […] there is no genuine issue of material fact to be tried." Id. A nonmoving party must then "admit, deny or qualify the facts supporting the motion […] by reference to each numbered paragraph of the moving party's statement of material facts." Id. The First Circuit has highlighted that "[p]roperly supported facts […] shall be deemed admitted unless controverted in the manner prescribed by the local rule." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection

Techs. GmbH, 781 F.3d 510, 520 (1st Cir. 2015) (quotation omitted). "[L]itigants ignore [those rules] at their peril". Gautier v. Brennan, 2019 WL 2754673, at *2 (D.P.R. 2019) (quotation omitted).

Regarding cases similar to the present one, this District has held that "cases strictly challenging an arbitration award or the remedy, is **amenable to the summary judgment process because the underlying facts are uncontested and thus the controversy turns purely on questions of law.**" *See* Union Independiente de Trabajadores de Aeropuertos v. Cargo Services Corp., 52 F.Supp. 292, 295 (D.P.R. 1999). Moreover, Stericycle's *Motion for Summary Judgment* stands unopposed and Stericycle's SMUF can be deemed admitted. To wit, the First Circuit has held that "the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (quoting Torres–Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003). Hence, an analysis under the summary judgment standard is proper.

**B. Review of Arbitration Awards Under Section 301 of the Labor Management Relations Act**

The First Circuit has consistently held that "[r]eview of arbitral decisions […] is extremely narrow and exceedingly deferential." Wheelabrator Envirotech Operating Services, Inc., v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 43

(1st Cir. 1996) (citing <u>Service Employees Int'l Union v. Local 1199 N.E., SEIU</u>, 70 F.3d 647, 651 (1st Cir. 1995)); *see also*, <u>Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees</u>, 873 F.2d 425, 428 (1st Cir. 1989) ("Judicial review of an arbitration award is among the narrowest known in the law."). "In general, a court reviewing an arbitral decision does 'not sit to hear claims of factual or legal error as an appellate court does in reviewing decisions of lower courts.'" <u>Wheelabrator</u>, 88 F.3d at 43 (quoting <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987)). Further, according to the First Circuit:

> In the *Steelworkers Trilogy*, the Supreme Court found that the policies behind federal labor law favor the arbitration system for labor disputes. The Court therefore held that an arbitration award is reviewable by a federal court only in very limited circumstances. […] The thrust of the Court's logic was that, because the collective bargaining agreement called for final and binding arbitration, the parties bargained only for the arbitrator's decision and are not entitled to judicial review unless it can be shown that the arbitrator acted in a way for which neither party could have bargained.

<u>Local 1445, United Food v. Stop & Shop Companies</u>, 776 F.2d 19, 21 (1st Cir. 1985) (citations omitted).

Under the test developed by the First Circuit in <u>Bettencourt v. Boston Edison Co.</u>, "a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is

concededly a non-fact." Id. at 21 (citing Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1050 (1st Cir. 1977); *see also* Trustees of Boston University v. Boston University Chapter, 746 F.2d 924, 926 (1st Cir. 1984)).

The Court notes that First Circuit case law clearly provides that it is not the arbitrator's reasoning which is subject to judicial review, but rather the arbitrator's result. *See* UMass Memorial Medical Center, Inc. v. United Food and Commercial Workers Union, 527 F. 3d 1, 5 (1st Cir. 2008). This means that "when the arbitration concerns the interpretation of a collective bargaining agreement, a court should uphold the view of the arbitrator so long as 'it can find, within the four corners of the agreement, any plausible basis for that interpretation.'" Wheelabrator, 88 F.3d at 44 (quoting El Dorado Technical Servs. v. Union Gen. De Trabajadores de Puerto Rico, 961 F.2d 317, 319 (1st Cir. 1992)).

The Wheelabrator case further explained that:

> In other words, an arbitrator may not ignore the plain language of the agreement, but a court need only be convinced that the arbitrator's reading 'draws its essence from the collective bargaining agreement' and does not merely rely on the arbitrator's own notions of 'industrial justice.' In fine, we should refuse to set aside an arbitrator's decision "unless it can be shown that the arbitrator acted in a way for which neither party could [possibly] have bargained.

> Id. (internal quotations omitted).

Therefore, "the question of arbitrability — whether a[n] ... agreement creates a duty for the parties to arbitrate the

particular grievance — is undeniably a judicial determination." PaineWebber Inc. v. Elahi, 87 F.3d 589, 595 (1st Cir. 1996) (quoting A T & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986).

Similarly, other Circuit Court of Appeals have stated that "[u]nderlying judicial deference to arbitral awards is the principle that the terms of the parties' agreement are controlling. This same principle requires courts to vacate awards when an arbitrator exceeds his authority under a collective bargaining agreement." U.S. Postal Service v. American Postal Workers Union ALF-CIO, 204 F.3d. 523, 527 (4th Cir. 2000). The Seventh Circuit has also held that "[i]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either) that the award can be said not to 'draw its essence from the collective bargaining agreement.'" Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 184-85 (7th Cir. 1985) (internal citation omitted) (quoting Young Radiator Co. v. International Union, U.A.W., 734 F.2d 321, 325 (7th Cir.1984)).

Thus, if a party failed to agree to arbitrate a matter, then an arbitrator **cannot** resolve the same. This occurs because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Kristian v. Comcast Corp., 446 F.3d 25, 37 (1st Cir. 2006)

(quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).

### III. FINDINGS OF FACT

Based on Petitioner's unopposed SMUF and the documents accompanying the same, the Court makes the following findings of fact:

1. Between May 1, 2010 and April 30, 2013, the exclusive representative of the employees of Stericycle was the Teamsters Union of Puerto Rico ("*Unión de Tronquistas de Puerto Rico*"), Local 901. (Docket No. 5-1 ¶ 1).

2. The Teamsters represented "all roll-off drivers, trailer persons, medical waste driver and medical utility in the company" that work in the facilities located in Urbanización Industrial Julio N. Matos, Lot 15, Carolina and Building 337, Industrial Free Zone, Guanajibo Borough, Mayagüez." (Id. ¶ 2).

3. On May 7, 2013, the Teamsters and Stericycle signed a Stipulation to extend the Stericycle/Teamsters CBA between May 1, 2013 and April 30, 2016. (Id. ¶ 6).

4. On May 7, 2012, the Teamsters filed a grievance (hereinafter "the [May 7, 2012] [G]rievance") in the Bureau against Stericycle. In said grievance, it was alleged that Stericycle failed to call the laid-off personnel and requested the payment and other benefits established in the CBA. (Id. ¶ 3).

5.  The [May 7, 2012] [G]rievance is the basis for the arbitration in Case No. A-19-880. (Id. ¶ 4).

6.  The Teamsters filed the [May 7, 2012] [G]rievance before the Bureau based on Article 11, Section 11.2 (2)(4) of the CBA, which establishes that if the parties are not able to reach an agreement, then the controversy will be presented to an arbitrator of the Bureau. (Id. ¶ 5).

7.  On March 9, 2016, after an election process in which the employees of the bargaining unit participated, the National Labor Relations Board certified the *Central General de Trabajadores* ("CGT") as the exclusive representative of the bargaining unit. (Id. ¶ 7).

8.  On November 1, 2016, the CGT and Stericycle signed a Collective Bargaining Agreement with retroactive effect as of May 1, 2016 until April 30, 2019. (Id. ¶ 8).

9.  On August 1, 2016 the Bureau held a hearing. (Id. ¶ 9).

10. During the arbitration hearing, Stericycle argued that the case was not subject to arbitration because the parties had not agreed to arbitrate the matter. (Id. ¶ 10).

11. Article 11 of the CBA between the CGT and Stericycle limits the grievance and arbitration process to any dispute "related to the interpretation and administration of the **instant collective bargaining agreement**." (Id. ¶ 11).

12. Article 38 of the Stericycle/CGT CBA states that:

> This collective bargaining agreement has all the agreed
> upon clauses between the parties and cannot be changed,
> amended or altered, except through a written agreement
> between the parties.
>
> The parties agree that during the negotiations of this
> collective bargaining agreement each party had the right
> and unlimited opportunity to make demands and proposals
> in relation to any matter that was not limited to the
> negotiations due to legal reasons and that the
> agreements reached are included in the collective
> bargaining agreement. Therefore, each party agrees that
> the other party is not forced to bargain in relation to
> any matter covered by this collective bargaining
> agreement or in relation to any matter that is not
> specifically referred to or covered in this collective
> bargaining agreement even though said matters were not
> considered by the parties when they were negotiating
> this agreement and when it was signed. (Id. ¶ 12).

13. On January 22, 2019, the Arbitrator issued an award and held that CGT was a successor union of the Teamsters and the case should proceed. (Id. at ¶ 13).

### IV. ANALYSIS

The Arbitrator Award framed the issue as follows:

> As it is revealed in the submission, we must decide the
> substantive arbitrability argument initiated by the
> Company. The employer alleged that the complaint is not
> subject to arbitration substantively, because there was
> **no valid Collective Bargaining Agreement between
> Stericycle of Puerto Rico and the Central General de
> Trabajadores at the time of the events**, but that the
> Agreement existed was between the Company and the Union
> de Tronquistas de Puerto Rico, which at that time had
> the exclusive representation of the workers. (Docket 5-
> 2 at 4) (emphasis added).

Without any mooring on the text of either the Stericycle/Teamsters' CBA or the Stericycle/CGT CBA, the Arbitrator determined that Stericycle had to arbitrate the May 7,

2012 grievance with CGT because the latter was a successor union to the Teamsters Union. The award is premised on the Arbitrator's conclusion that CGT is a successor union to Teamsters. (Docket No. 5-1 ¶ 13).

While CGT is undeniably Stericycle's current exclusive representative of the relevant Stericycle employees, CGT is **not** the Teamsters' successor with respect to the Stericycle/Teamsters' CBA and its dispute resolution procedures.

Moreover, just as in Case No. 19-1175, Stericycle of Puerto Rico, Inc. v. Central General de Trabajadores, a review of the four-corners of the Stericycle/Teamsters CBA reveals no provision that "in essence" would require Petitioner to arbitrate the May 7, 2012 grievance with a non-party such as CGT. *Compare with,* Wheelabrator, 88 F.3d at 46-48 (upholding arbitrator's interpretation of a successor clause in a CBA to cover new employer operating a plant).

Likewise, a review of the four-corners of the Stericycle/Teamsters CBA reveals no provision that "in essence" would require Stericycle to arbitrate with CGT grievances that arose **prior** to this latter CBA's effective date of **May 1, 2016** such as the May 7, 2012 grievance. **Instead, Article 11 of the CBA between the CGT and Stericycle limits the grievance and arbitration process to any dispute "regarding the interpretation and**

**administration of this Collective Bargaining Agreement." (Docket No. 19-2 at 17).**

The Teamsters' CBA does contain a successor clause, but it only regulates a change in employer (here, Stericycle) and **not** a change in the union which represents Stericycle's employees. (Docket No. 19-1 at 55 ¶ 30.9). Moreover, Sections 11 and 38 of the Stericycle/CGT CBA limit Stericycle's obligation to arbitrate with CGT **only** to those matters specifically covered by the CBA and which pertain to the interpretation and administration of the same. (Docket No. 19-2 at 17-18 ¶11 and 60 ¶38). Thus, no clause exists within the four corners of the CBA that can bind Stericycle to arbitrate with a different exclusive representative of its employees.

As stated before herein, "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steel Workers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). Neither the Stericycle/Teamsters CBA nor the Stericycle/CGT CBA contain a contractual obligation that Stericycle arbitrate **with CGT** a matter that arose four (4) years prior to the effective date of the Stericycle/CGT CBA while **the Teamsters** were the exclusive representative of the Stericycle employees. Thus, this case falls into the narrow exceptions which warrants that the Court decide a particular arbitration-related

matter. This because the issue of whether an arbitration agreement applies to a specific party is a matter for the Courts to decide and not an arbitrator. *Compare with* Unite Here Local 217 v. Sage Hosp. Res., 642 F.3d 255, 262 (1st Cir. 2011) (quoting Green Tree Financial Corp v. Bazzle, 539 U.S. 444, 445 (2003)(plurality opinion)) ("[P]arties dispute the meaning of language in the duration clause of the Agreement—a classic issue of contract construction and […] [to] be resolved by an arbitrator. This type of grievance 'concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.'")

As explained above, the main issue here is not whether the arbitration clause in the Stericycle/Teamsters or Stericycle/CGT CBAs was valid; rather, whether Stericycle should be made to arbitrate with CGT claims stemming from a previous CBA with the Teamsters. Hence, unlike in the First Circuit case of Unite Here Local 217, the present dispute is a substantive question of arbitrability which should be addressed by the Court. *See* Id. at 262 (quoting Green Tree Financial Corp. 539 U.S. at 453) ("The present dispute is therefore not a substantive question of arbitrability but a 'matter of contract interpretation [that] should be for the arbitrator, not the courts, to decide.'")

The Court thus believes that the issue here revolves around the applicability of the arbitration clause to the underlying

dispute between the parties and **not** to a contractual interpretation of the arbitration clause. As stated above, here there was no successor clause, such as the one in Wheelabrator to bind Stericycle to arbitrate a grievance that arose under the Stericycle/Teamster's CBA with a new union. Lastly, the Court failed to find in its revision of either CBA any language which stated that Stericycle had to continue to arbitrate pending matters with CGT. Hence, the arbitrator exceeded her authority and her award failed to "draw its essence from the collective bargaining agreement." Wheelabrator, 88 F.3d at 44.

## V.   CONCLUSION

The Arbitration Award issued by the Bureau of Mediation and Arbitration of the Department of Labor of the Commonwealth of Puerto Rico on December 3, 2018 in the case captioned Central General de Trabajadores v. Stericycle, Inc., Case A-19-880, is hereby **VACATED**, and the *Motion for Summary Judgment* is **GRANTED**.

The Court expresses no view as to whether the arbitration may continue or not between the Petitioner and the Teamsters.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 19th day of December 2019.

S/ RAÚL M. ARIAS-MARXUACH  
United States District Judge
